Brennan v. Clark.

---

J. E. BRENNAN ET AL. V. W. F. CLARK.

[FILED APRIL 29, 1890.]

1. **Building Contract: BOND: PENALTY: LIQUIDATED DAMAGES: DISTINCTION.** In construing a contract to determine whether or not a provision therein for the payment of a stipulated sum in case of default by one of the parties is to be considered as a penalty or liquidated damages, the court will consider the subject-matter, the language employed, and the intention of the parties. If the construction is doubtful, the agreement will be considered a penalty merely. If damages re-

25

sult from the performance or omission of acts, which damages are certain or can be ascertained by evidence, the stipulated sum is considered as a penalty; but where the acts or omissions occasioning damages are not susceptible of measurement by a pecuniary standard, the sum stipulated ordinarily will be regarded as liquidated damages.

2. ———: ———: ———. A provision in a building contract that the contractor'shall pay a stipulated sum per day after a certain date if he failed to complete the building at the time designated is in the nature of penalty and not liquidated damages.

3. ———: ———: SURETIES: DISCHARGE. The sureties on the bond of a contract or for the erection of a building are bound only in the manner and to the extent provided in the obligation. And when the contract provided that the work was to be done under the supervision of an architect named, and payments to be made only on estimates made by him from time to time as the work progressed, and certain payments were made without such supervision and estimates, *held*, that the sureties were entitled to a deduction for any injury they may have sustained thereby.

ERROR to the district court for Douglas county. Tried below before DOANE, J.

*F. A. Brogan, M. V. Gannon,* and *J. L. Kennedy,* for plaintiffs in error :

The sum fixed was a penalty (1) because the damages could be easily ascertained (1 Sutherland, Damages, 508 ; 2 Greenleaf, Ev. [14th Ed.], 267 ; *Wilcus v. Kling,* 87 Ill., 107 ; *Noyes v. Phillips,* 60 N. Y., 408 ; *Dullaghan v. Fitch,* 42 Wis., 679 ; *Watts v. Camors,* 115 U. S., 353 ; *Lansing v. Dodd,* 45 N. J. L., 525 ; *Shreve v. Brereton,* 51 Pa. St., 175 ; *Farrar v. Beeman,* 63 Tex., 175; *Scofield v. Tomp-kins,* 95 Ill., 190 ; *Savannah & C. R. Co. v. Callahan,* 56 Ga., 331); (2) because the agreement consisted of several parts—required the construction of four different houses (1 Sutherland, 524–5 ; *Cheddeck v. Marsh,* 21 N. J. L., 463 ; *Lansing v. Dodd, supra; Higgins v. Weld,* 14 Gray [Mass.], 165; *Kemble v. Farren,* 6 Bingham [Eng.], 141 ;

*In re Newman*, 4 Ch. D., 724; *Tayloe v. Sandiford*, 7 Wheat. [U. S.], 13; *Hammer v. Brandenbush*, 31 Mo., 49; *Goldsborough v. Baker*, 3 Cranch [U. S. C. C.], 48; *Nash v. Hermosilla*, 9 Cal., 584; *Halleck v. Slater*, 9 Ia., 599; *Brown v. Bellows*, 4 Pick. [Mass.], 178; *Trowler v. Elder*, 77 Ill., 452; *Niver v. Rassman*, 18 Barb. [N. Y.], 50); (3) because from the terms of the contract it was evidently so intended by the parties. Plaintiffs in error were released from liability as sureties, because of the non-observance of the provisions of the contract. (*U. S. v. Tillotson*, 1 Paine, [U. S. C. C.] 305; *Simonson v. Thori*, 31 N. W. Rep. [Minn.], 861; Brandt, Sureties, secs. 345, 347, 361, 370; Parsons, Contracts, ch. VII, note; *Miller v. Stewart*, 9 Wheat. [U. S.], 680; *Mayhew v. Boyd*, 5 Md., 102; *Bringham v. Wentworth*, 11 Cush. [Mass.], 123; *Paine v. Jones*, 76 N. Y., 274; *Evans v. Lawton*, 34 Fed. Rep. [Mo.], 233; *Atlanta Nat. Bank v. Douglas*, 51 Ga., 205; *Bacon v. Chesney*, 1 Starkie [Eng.], 192; *Hawkins v. Humble*, 5 Coldwell [Tenn.], 531; *Ryan v. Trustees of Shawneetown*, 14 Ill., 20; *Watriss v. Pierce*, 32 N. H., 560; *Judah v. Zimmerman*, 22 Ind., 388; *Bragg v. Shain*, 49 Cal., 131; *Dundas v. Sterling*, 4 Pa. St., 73; *F. & M. Bank v. Hathaway*, 36 Vt., 539; *Vose v. Florida R. Co.*, 50 N. Y., 369; *Lee v. Highland Bank*, 2 Sandf. [N. Y.], 311; *U. S. v. Admins. of Hillegas*, 3 Wash. [C. C.], 70; *Weir Plow Company v. Walmsley*, 110 Ind., 242; *Taylor v. Johnson*, 17 Ga., 521.) The reserve portion of the contract price is to be construed as a security. (*Dullaghan v. Fitch*, 42 Wis., 679). ·

*G. W. Ambrose*, and *V. O. Strickler, contra:*

The law permits parties in their agreements to fix their own terms, conditions, and prices, and the amount estimated by themselves, with interest thereon, is the rule of damages. (Sedgwick, Measure of Damages [8th Ed.], 236; *Welch v. McDonald*, 8 S. E. Rep. [Va.], 711; *Doolittle v.*

*McCullough*, 12 O. St., 365; *Mansfield v. R. Co.*, 102 N. Y., 205.) Where the measure of relief is furnished by the contract, only its violation need be proved. (Sedgwick, 272; *Adams Express Co. v. Egbert*, 36 Pa. St., 360.) A definite sum fixed by the parties constitutes liquidated damages. (Sedgwick, 490; *Smith v. Whitaker*, 23 Ill., 367; *Bingham v. Richardson*, 1 Winston's Law [N. Car.], 215.) The objection of payment by Clark to defendants in error in an unauthorized manner was not raised below and cannot be set up here. Nothing in the contract obliged Clark to see to the distribution of the money.

MAXWELL, J.

This action was brought in the district court of Douglas county by the defendant in error against the plaintiffs in error as sureties on a bond given by J. N. Bennett and Chas. R. Boehme as contractors for the erection of certain buildings in the city of Omaha.

On the trial of the cause the jury returned a verdict in favor of the defendant in error for the sum of $3,141, upon which judgment was rendered.

It is alleged in the petition that in the fall of 1886, Bennett & Boehme entered into a contract with Clark to erect for him "a block of four brick buildings on land owned by him, known as part of sublot 11 in block 3, Capital addition to Omaha," and for that purpose employed one Sidney Smith as an architect to prepare the necessary plans and specifications for the erection of said buildings; that "in said contract of agreement it was stipulated by the party of the first part, the plaintiff, that, in consideration of the foregoing covenants and agreements entered into by the parties of the second part, that he, the party of the first part, agreed with the party of the second part, and said party of the second part performing the covenants and agreeements on their part, that the party of the first part would pay, or cause to be paid, unto the said

party of the second part for erecting and completing all work in said buildings, except mantels and furnaces, the sum of eleven thousand nine hundred and twenty-eight dollars, the same to be paid by installments as the work progressed, less the sum of fifteen per cent, which sum was to be retained by the said plaintiff until the final completion and acceptance of the same ; *Provided, however,* All bills for material and labor on such block of buildings has been paid for and of all work secured from liens ; *And further provided,* That in each of said cases a certificate should be obtained, signed by the said architect or superintendent. * * * It was further agreed that the work done and material furnished should be to the entire satisfaction of Sidney Smith, architect, who by the terms of said contract and agreement was declared to be the superintendent of said works."

The defects alleged in the petition are as follows :

" Plaintiff has expended in the partial completion of said building so left as aforesaid uncompleted by said defendant the sum of $63.80.    There is still left work unfinished which will cost and be reasonably worth the sum of $500.

" The plaintiff has paid the said defendants Boehme & Bennett the sum of

| | | |
|---|---:|---:|
| Cash.......................................................... | $10581 | 00 |
| Has paid for glass and glazing...................... | 2 | 25 |
| For fitting keys in the doors of said houses...... | 1 | 50 |
| Fixing locks ............................................ | | 75 |
| Bolt on front door ..................................... | 1 | 50 |
| Sand for area of walls................................. | 8 | 10 |
| Three iron bolts ........................................ | 1 | 60 |
| Carpenter work.......................................... | 9 | 00 |
| Order to Frank Newland.............................. | 6 | 60 |
| For labor.................................................. | 5 | 45 |
| For brick to finish area walls ...................... | 13 | 65 |
| For bricklayers.......................................... | 6 | 00 |

And that there was a coat of stain work left off the entire building, not including the sub-basement, 1,792 yards, at 8 cents a yard, which sum would be reasonably worth the amount of.......................................... $143 36

There was left off from the entire sub-basement painting, 152 yards, which would reasonably be worth the sum of..... ......................... 53 20

Also the fittings of the sash of the windows and door casings, the labor of which consumed six days, at $3 per diem, which reasonably would be worth ........................................... 18 00

The material therefor was reasonably worth..... 3 50

Making a total of..........................$10859 36"

And the liens claimed against the buildings are alleged to be:

To one McGreer...................................... $205 40
To one Elliot.............................. ............ 883 10
James Morton & Son................................ 392 18
Newcomb Lumber Co............................... 942 99
E. R. Benson ......................................... 54 46
Ransom & Co........................................ 956 99
Whitman *et al*....................................... 115 00

Total liens .................................. $3550 12

There is also a claim of $900 liquidated damages for a failure to complete the building on May 1, 1887, the allegations being: "That the said Boehme & Bennett entered upon the construction of said block of buildings and furnished the material therefor so far as the same has been completed, but the plaintiff says that said buildings have not been completely finished, nor any of them; that many portions of the work, according to the said plans and specifications, have been left undone; that the said Boehme & Bennett abandoned said work and were notified on the 15th

day of August, 1887, that the said buildings were incomplete and requiring them to finish them ready for occupancy under the aforesaid contract and bond, and that the plaintiff would be compelled to finish the same and charge the expense thereof towards their contract price, of which notice the said Boehme & Bennett have taken but little notice, if any, and the buildings at this date are still incomplete and unfinished; and that the said block of buildings were not finished and ready for occupation on the 1st day of May, 1887, as by the terms of said contract provided, and such delay was not prevented by accidental fire, or by any circumstances over which the parties of the second part had or could have had no control, but that on or about the 1st day of August, 1887, the plaintiff was enabled to have the buildings occupied, in an incomplete and unfinished condition, whereby, and under the terms of said contract, the said plaintiff has suffered damages in the sum of $900."

The sureties in their amended answer admit the execution of the bond, but allege, first, a verbal modification of the contract. This defense, however, was abandoned on the trial, and the jury in effect were so instructed.

The third defense is "that by the terms of the contract set out in plaintiff's petition it was provided that the plaintiff should have the right to retain in his hands all moneys due the defendants Boehme & Bennett until all liens and claims for work and material were paid and discharged; that upon the work performed by the said contractors Boehme & Bennett for the plaintiff a sufficient amount of money became due and owing to said contractors to have paid off and discharged all such liens and claims while he so held the money of said contractors; that if any such claims are now valid liens against the plaintiff's property the same occurred by the fault of the plaintiff in paying over the said moneys to the contractors instead of retaining the same until such liens were discharged, as in said contract provided, whereby these defendants were re-

leased from all liability on said bond so far as concerns the liens for labor and material."

The first question that will be considered is the nature of the contract for indemnity in case of failure to complete the buildings on May 1, 1887.

The provision in the contract as set out in the petition is as follows: " That if the said work or any part thereof should not be finished and completed in the manner hereinbefore set forth, and in said contract mentioned, by the said party of the second part, that the parties of the second part should forfeit the sum of $10 for each and every day from and after that time during which the said work should remain unfinished and incomplete as aforesaid, to be deducted from the sum agreed to be paid by the said party of the first part." So far as appears the buildings were nearly complete, so that, according to Clark's own showing, it required but a comparatively small sum to finish the buildings as he understood the contract. He was authorized in case of a delay by the contractors for three days to notify them and in case of their neglect upon such notification being made, to employ suitable persons to complete the contract. He seems to have made no complaint, however, until the middle of July. If he was sustaining damages by the delay, he had it in his power to reduce such damages to the lowest possible limit and it was his duty to do so. The provision for $10 per day is to be construed with reference to the provision authorizing Clark to finish the buildings in case the contractors upon notice failed to do so. We do not, however, regard the proviso for $10 after the time fixed for the completion of the buildings as liquidated damages. The terms of the contract do not indicate an intention to agree upon $10 per day as the actual amount of damages sustained by Clark from the delay in completing the building.

There is a want of harmony in the cases as to the distinction between liquidated damages and damages in the

nature of a penalty. It is impossible to harmonize the decisions upon that question and we are compelled to adopt such rule as seems to be just and equitable.

In deciding this question the courts take into consideration the subject-matter of the contract, the language employed, and the intention of the parties. If the construction is doubtful, the agreement is considered as a penalty merely. If the defendant provides for the payment of a large sum, on failure to pay a less sum at a particular date, the larger sum is merely a penalty, and if damages result from the performance or omission of acts which are certain or ascertainable by evidence, the stipulated sum is considered as a penalty; but where the acts or omissions are not susceptible of measurement by a pecuniary standard the sum stipulated will ordinarily be regarded as liquidated damages. (*Bagley v. Pedi*, 5 Sandf., 192; *Cheddick v. Marsh*, 1 Zabriszkie [N. J.], 463; *Chase v. Allen*, 13 Gray, 42; *Clement v. Cash*, 21 N. Y., 253; *Brinkerhoff v. Olp*, 35 Barb. [N. Y.], 27; *Bearden v. Smith*, 11 Rich. [S. Car. L. R.], 554; *Moore v. Platte Co.* 8 Mo., *467; *Colwell v. Lawrence*, 38 Barb. [N. Y.], 643; *Goldsborough v. Baker*, 3 Cranch, C. C., 48; *Laubenhermer v. Mann*, 19 Wis., *519; *Long v. Towl*, 42 Mo., 545; *Jaquith v. Hudson*, 5 Mich., 123; *Ricketson v. Richardson*, 19 Cal., 330; *Fisk v. Gray*, 11 Allen, 132.)

In cases where, independently of the agreement, the damages would be incapable of being ascertained except by conjecture, such damages will be considered as liquidated if so designated in the contract; as, where there was a breach of contract to marry (*Lowe v. Peers*, 4 Burr., 2225); not to practice or do business within certain limits. (*Crisdee v. Botton*, 3 C. & P., 240; *Nobles v. Bates*, 7 Cow., 309; *Smith v. Smith*, 4 Wend., 468; *Streeter v. Rush*, 25 Cal., 67; *Cashing v. Drew*, 97 Mass., 445; 2 Wait's Act. & Def., 38.)

In case of failure to complete certain buildings which are intended to be rented, the amount of actual damages

ordinarily would be the loss of rent and this is susceptible of proof as to the amount of actual loss. Justice therefore will be subserved by treating the stipulation in a contract as to damages in case of delay as in the nature of a penalty, and this defense is available to the contractors as well as the sureties, as they join in the petition in error.

The sureties claim that while the contract provides, and the bond was executed upon condition that Sidney Smith, the architect, was to have supervision of the work, and from time to time make estimates as the work progressed, upon which payments were to be made, yet Mr. Clark disregarded this provision designed for his and their protection and paid very large sums to the contractors without such supervision and estimates. On cross-examination he testifies:

Q. When did you employ Mr. Smith to become the architect of the building?

A. When he made the plans for me.

Q. You employed him, then, to become the architect and paid him?

A. Certainly; I didn't pay him then but have paid him.

Q. How lately?

A. I believe it was along in the fall or winter of that year some time; he called on me and I paid him.

Q. Sidney Smith, when they went to work, promptly assumed the superintendency of that building?

A. Not at the beginning.

Q. When did he commence, in November?

A. I don't remember exactly when he began, but he began after they had started the brick work. It looked to me like they were not doing it as good as it ought to be, and I turned it over to him.

Q. You turned it over to him then?

A. Yes, sir.

Q. But there had been $2,600 to $3,000 worth of work done before he came to look to it?

A. Probably there was.    I don't know the amount of work.

Q. Would you say there was less than $2,600 to $3,000 worth of work done before Sidney Smith assumed control of it?

A. I wouldn't say there was, because he always had control of it, only he wasn't called up there regularly to look over the work to see how it was proceeding until a little while before.

Q. Did he call at all before there was $2,600 or $3,000 worth of work done?

A. The way the work was done it looked to me like they weren't doing it as good as they were before.

Q. Weren't they working there two months, nearly three months, before Mr. Smith assumed any control of it?

A. No, sir, I think not.

Q. To the best of your judgment how long were they were working there before Mr. Smith assumed control of it?

A. Well, possibly a month.

Q. Not more?

A. I wouldn't say it was more; it might have been less.

Q. May have been less?

A. Yes, sir.

Q. I will ask you if Mr. Smith assumed any control of it until the time that yourself and the contractors got into a misunderstanding as to the height of the basement walls?

A. Oh certainly; I never heard anything about that basement wall until he brought me in that bill of extras.

Q. Never heard anything about it?

A. No, sir.

Q. No conversation about it at all?

A. No, sir.

Q. No objection ever made in the presence of Smith or any one else?

A. Not until he brought me in a bill after the work was

completed; he said he had a bill of extras, and brought in a bill of extra work on the basement walls.

Q. Isn't it a matter of fact when he had the basement walls up you contended it should be two feet seven inches higher?

A. No, sir; when I was there it was asked how high the basement should be, and I told him the plans called for two feet six inches below the floor line by the grade.

Q. The street hadn't been graded there at all at the time?

A. No, sir; the street wasn't graded when we first began; they graded the street while the building was in process.

Q. I ask if it is not true that you contended that they should build it two feet seven inches higher than where the grade was?

A. No, sir; I had a pole set on each corner and graded up to the top of these poles; I showed him; he knew.

Q. Who did you show?

A. I showed Mr. Boehme.

Q. Did you show Mr. Bennett?

A. Yes, sir.

Q. There was no difference in opinion between you at all?

A. No, sir.

Q. They never said anything about that until they presented you with a bill after the building was completed?

A. Yes, sir.

Sidney Smith, the architect, testifies:

Q. You are the same person who designed the plans and drawings for the W. F. Clark building, 2205 Douglas street?

A. Yes, sir.

Q. Do you know the time the building was commenced?

A. No; I could not tell that from memory.

Q. Can you place the time?

A. The date of the contract, I could state from that.

Q. Do you remember the time the contract was executed?

A. No, sir.

Q. Were you employed at that time to superintend the construction of the building?

A. No, sir.

Q. State what your relation to that building was at that time.

A. I was to prepare the plans and specifications and see that the contract was completed. The contract was made with the contractors.

Q. What do you mean?

A. Simply to make the contract with the contractors. My duties ended with that.

Q. Were you afterwards employed to inspect the building?

A. No, sir.

Q. With whom did you make the arrangement that was made?

A. Mr. Clark.

Q. Under your contract with Mr. Clark in relation to that building were you to inspect the building?

A. There was a verbal understanding to see that the building was completed according to the plans and specifications, but at the time the contract was completed I had nothing to do with that.

Q. When did you first take charge, if you did at all, of the building?

A. It was some two or three months after that.

Q. Can you fix the date by any memorandum you have?

A. Not beyond the first estimate.

Q. When was your first estimate; have you your stubs?

A. Yes, sir; January 31st is the first issue of the estimate.

Q. Examine this certificate, dated January 31, 1887, included in Exhibit "B," and state whether that is the first estimate.

A. That is the first estimate.

Q. Was that issued at the time it was dated?

A. Yes, sir; it corresponds.

Q. Was that the time you took charge of the superintendence?

A. Just previous to that; possibly it might have been a week or ten days.

Q. State what progress had been made on the building when you took charge of it as superintendent.

A. The walls had got up to the first story joists; part of them might have been just above.

Q. You mean just above the first floor?

A. The first floor joists.

Q. I will ask you if you gave an estimate November 27, 1886, for $600?

A. No, sir.

Q. Did you give any estimate December 11, or about that time, for $1,600?

Q. Did you give any estimate on the 8th of December, 1887, for $400?

A. No, sir.

Q. In an estimate dated January 31 you have an estimate to this effect: "Amount previously paid, $2,600." State how you come to in-ert that.

A. By the agreement between Mr. Clark and Mr. Boehme and Mr. Bennett that he had received $2,600, and Mr. Clark that he had paid; in order to keep that straight, I added $2,600.

Q. You superintended that from some time in January until it was completed?

A. Yes, sir.

Q. What was your duties as superintendent?

A. To see that the work was carried on according to the specifications.

Q. What were your duties in regard to payments?

A. Issue estimates and apply them only on estimates.

This testimony is not denied.

The rule is well settled that a surety is bound in the manner and to the extent provided in the obligation executed by him and no further. He may stand upon the terms of his contract, and if a material variation is made therein without his consent he will thereby be discharged. (*Simonson v. Thori*, 31 N. W. Rep., 861; *Miller v. Stewart*, 9 Wheat., 680; *Mayhew v. Boyd*, 5 Md., 102; *Brigham v. Wentworth*, 11 Cush., 123; *Paine v. Jones*, 76 N. Y., 274; *Atlanta Nat. Bank v. Douglass*, 51 Ga., 205; *Ryan v. Shawneetown*, 14 Ill., 20; *Judah v. Zimmerman*, 22 Ind., 388; *Calvert v. London Dock Co.*, 2 Keen [Eng.], 638; *Bragg v. Shain*, 49 Cal., 131; *Dundas v. Sterling*, 4 Pa. St., 73; *Weir Plow Co. v. Walmsley*, 110 Ind., 242; *Taylor v. Johnson*, 17 Ga., 521.)

The money paid to the contractors without estimates made by the architect was unauthorized by the terms of the contract and the sureties are entitled to a deduction for any losses they may have sustained thereby. There is no claim in the answer that they were discharged by reason of the unauthorized payments made by Clark and that question is not in the case. The answer is that they (the payments) were made in open disregard of the provisions of the contract.

If the person for whose benefit the indemnifying bond was given disregard the conditions upon which the indemnity rests and waives the safeguards designed for the protection of the sureties, he does so at his peril. Mr. Clark also did not retain the full fifteen per cent required by the contract. This is met by the objection that he paid on the estimates of the architect. This would be a valid objection if all payments had been made on his estimates, but as they were not, the objection fails.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.