JOHN J. O'ROURKE v. JOHN N. BURKE ET AL.

FILED APRIL 16, 1895.   No. 6373.

1. **Guaranty:** BUILDING CONTRACT.   In a building contract it was provided, in effect, that a part of the compensation might be paid on the pay-roll every two weeks as the work progressed, and furthermore, that in case of payment a certificate should be obtained from the architect, among other things, to the effect that he considered the payment due.   *Held*, That to the amount of payments of the pay-rolls made without the required certificate

the guarantor of compliance with the terms of his agreement by the contractor was discharged.

2. **Building Contracts.** The reservation of the right at his own option to make payments by assuming lumber bills, of necessity excluded the inference therefrom that the proprietor assumed payment of lumber bills, of the existence of which he had no knowledge.

3. ————. The reservation of the right to make changes in the plans to be followed in the erection of a building implies, as against a mere guarantor of performance by the contractor for the erection of such building, that the changes shall be such as reasonably might be considered as within the contemplation of the parties principal at the time such building contract was entered into.

ERROR from the district court of Douglas county. Tried below before DAVIS, J.

The facts are stated by the commissioner.

*Charles Offutt* and *Charles S. Lobingier*, for plaintiff in error:

The surety was released by Burke's failure to retain the two-hundred-dollar reserve. (*Bell v. Paul*, 35 Neb., 240; *Simonson v. Thori*, 31 N. W. Rep. [Minn.], 861; *Calvert v. London Dock Co.*, 2 Keen [Eng. Ch.], 638; *Board of Commissioners v. Branham*, 57 Fed. Rep., 179.) He was also released by the failure to require certificate from the architect or to make payments "on the pay roll" to the laborers. (*Hayden v. Cook*, 34 Neb., 677.) A further ground of release is found in the unreasonable changes which were made in the plans without the consent of the surety and which materially increased the cost beyond the contract price. (*Consaul v. Sheldon*, 35 Neb., 247; *McLeod v. Genius*, 31 Neb., 6.) Whether the changes were unreasonable and the increase material were questions of law for the court. (*Oliver v. Hawley*, 5 Neb., 439; *Memphis Branch R. Co. v. Sullivan*, 57 Ga., 240; *Mispelhorn v. Farmers Fire Ins. Co.*, 53 Md., 473; *Pemberton v. Dooley*,

O'Rourke v. Burke.

43 Mo., App., 176; *Chicago, B. & Q. R. Co. v. McLal-
len,* 84 Ill., 116; *Penn Mutual Life Ins. Co. v. Crane,* 134
Mass., 56; *Gallon v. Van. Wormer,* 21 S. W. Rep. [Tex.],
547; *Chicago, B. & Q. R. Co. v. Landauer,* 36 Neb., 642.)
All the provisions of the contract are to be construed most
strictly in favor of O'Rourke. (*Miller v. Stewart,* 9 Wheat.
[U. S.], 638; *Crane Co. v. Specht,* 39 Neb., 123, annotated,
38 Cent. L. J., 387.)

*Francis A. Brogan, contra,* cited as to the retention of
the reserve: *Foster v. Dohle,* 17 Neb., 631; *Irish v. Pheby,*
28 Neb., 231; *Consaul v. Sheldon,* 35 Neb., 247.

RYAN, C.

This action was brought in the Douglas county district
court by John N. Burke against D. A. Way, the princi-
pal, and John J. O'Rourke, his surety, on a building con-
tractor's bond which had been executed to Mr. Burke.
There were alleged in the petition several failures of the
principal to perform according to the terms of his contract,
followed by a prayer for judgment for $1,500, the penal
sum named in the bond sued upon. There was a verdict
for the sum of $950, on which the judgment now com-
plained of was duly rendered against O'Rourke, who alone
defended. The contract for the faithful performance of the
terms of which the above bond was entered into was dated
May 12, 1891. It required D. A. Way, on or before
June 24, 1891, to build to completion a certain hotel and
hand ball court according to the requirements of certain
plans and specifications therein referred to. The principal
contentions which we shall consider were as to the manner
in which payments of the amounts due under such contract
should be made. The contract itself was prepared for sig-
nature by filling out the blanks in a printed form. This
was done by an architect in such a manner as to render ap-
plicable Mrs. Quickley's description of bad language as an

"abusing of God's patience and the king's English." It is a well recognized rule that where a printed form has been filled out the written language controls that which is printed. The difficulty of determining just what was agreed can be illustrated only by quoting the exact written language with its defective orthography, its misplaced capital letters, and absence of punctuation, just as they exist. The provisions as to payments were in the following partly printed and partly written language, that which was written being indicated by the use of italics:

"*John Burke* * * * will well and truly pay, or cause to be paid unto the part— of the first part or unto *D. A. Way* heirs executors administrators or assigns the sum of $2143.80 *cents* Dollars lawful money of the United States of America in manner following: On ——— 1891, *$2143.80 cents—the first payment in 2 weeks or the pay Role Every two weeks as the work progresses and John Burk Reserves the wright to asomes the lumber Bills But to keep Back two hundred dollars untill the work is all complete and excepted* when the building—is all complete and after the expiration of *10* days when all the Drawings and Specifications have been returned to J. W. Boileau Architect:

" Provided that in each case of the said payments a certificate shall be obtained from and signed by J. W. Boileau Architect to the effect that the work is done in strict accordance with Drawings and Specifications and that he J. W. Boileau considers the payment properly due," etc.

In the petition it was alleged " that during the progress of said work the plaintiff paid to the said Daniel A. Way, upon the written certificate of plaintiff's architect, the sum of seven hundred and sixty-eight dollars and five cents ($768.05)." In the answer there was pleaded an entire failure to require a certificate of the architect showing that the work had been done in the manner required, or, that J. W. Boileau considered payments properly due. By reply the plaintiff denied that he was required by the terms

of the contract to make said payments to the plaintiff for the purpose of paying the pay-roll only upon the production of a certificate from the architect, and alleged the fact to be that no certificate was by the terms of said contract required to be obtained from the said architect for the payment of the amount necessary for the pay-roll every two weeks during the progress of the said work, and that each and every payment made to the contractor during the progress of said work was made upon orders signed by the architect. At random from the bill of exceptions, we quote some of the orders on which payments were made, to-wit:

"Mr. John Burke, please pay to the contractor, D. A. Way, the sum of $100.00, as estimate on building.

"J. W. BOILEAU."

"Mr. John Bork, please pay to J. C. Pottinger the sum of $25.40. J. W. Boileau, Superintendent. Charge the same to plaster account."

"Mr. John Bork, pay D. A. Way five dollars on account O. K.        J. W. BOILEAU, *Superintendent.*"

"John Bork, please pay to D. A. Way the sum of $246.90. J. W. BOILEAU on building, *Superintendent.*"

The above are samples of such orders as were in evidence, and from the testimony of witnesses and the averments of the reply above referred to it is quite evident that whatever else was issued by Mr. Boileau precedent to payments were in the same style. It must therefore be accepted as beyond question that each payment on the pay-rolls was made without obtaining a certificate from the architect as to how the work had been done and that he considered the said payment properly due. As we understand the written language quoted from the contract, the terms were that the first payment was to be in two weeks to D. A. Way, or the pay-roll (to be paid D. A. Way) every two weeks as the work progressed; in other words,

Mr. Burke was to make payment according to the pay-rolls at intervals of two weeks as the work progressed.  By the printed proviso it was further required that as evidence that each pay-roll showed correctly what was payable, there should be obtained a certificate of the architect that he considered the sum shown by the pay-roll as at the time properly due.   If at the time this suit was brought the plaintiff had in his hands money due for labor done under the above contract he could not recover from the surety the amount withheld from the principal.   If that money was at one time in his hands and he paid it to the principal he must, to entitle himself to a recovery as against the surety *pro tanto*, be able to show that the payment to the principal was not in disregard of the terms of the contract as to which the surety sustained the relation of guarantor.   As was said in *Brennan v. Clark*, 29 Neb., 385: "The rule is well settled that a surety is bound in the manner and to the extent provided in the obligation executed by him, and no further."   See, also, *Bell v. Paul*, 35 Neb., 240, wherein it was held under a contract restricting payments to eighty-five per cent of the amounts of work done as shown by estimates of the architect, that payments in excess of eighty-five per cent without consent of the surety or estimate by the architect discharged such surety.   The same principle was recognized in *Hayden v. Cook*, 34 Neb., 670. . In the case at bar it was not shown that there was ever made by the architect a certificate which would justify payment of the amount of any fortnightly pay-roll.   Payment without such certificate was, as against the surety, as though there was no payment whatever.   As it is undisputed that the verdict was reached upon the assumption that such payments as were made upon the pay-rolls were properly made, the judgment of the district court must be reversed.

As to the construction to be given to the language whereby Mr. Burke reserved the right to assume the lumber bills, we are of opinion that the district court properly

held that the lumber bills contemplated were such as were
known to Mr. Burke, for it could hardly have been ex-
pected that he would undertake to exercise a right of op-
tion as to that of the existence of which he was ignorant.
The amount of the pay-rolls and of the lumber bills in the
aggregate assumed, however, should not have been in excess
of $1,943.80; that is to say, there should have been held
back by Burke the sum of $200. On his theory, as we
understand it, this was done. In the contract between Mr.
Way and Mr. Burke was the following provision: "Third
—Should the proprietor at any time during the progress
of the said works require any alterations of, deviations
from, additions to, or omissions in the said contract, speci-
fications, or plans, he shall have the right and power to
make such change or changes, and the same shall in no way
injuriously affect or make void the contract, but the differ-
ence for work omitted shall be deducted from the amount
of the contract•by a fair and reasonable valuation; and for
additional work required in alterations the amount based
upon the same prices at which the contract is taken shall
be agreed upon before commencing additions as provided
and hereinafter as set forth in article No. 6, and such
agreement shall state also the extension of time (if any)
which is to be granted by reason thereof." In the con-
struction of the building changes were made which involved
greater cost than was originally contemplated, but these
changes in advance were arranged for between Mr. Way
and Mr. Burke, consistently with the provisions of their
contract in respect thereto. The surety nevertheless con-
tends that the departure from the plans and specifications
operated to relieve him of liability. The instruction of
the court, very aptly defining the rights of the surety in
this respect, was in the following language: "You are in-
structed that under the contract the parties thereto had a
right to agree to alterations, additions, or changes in the
building without avoiding the contract, but that, in such

case, if such changes or additions increased the cost of the building, the amount thereof should be added to the contract price and the plaintiff would become liable to pay for such increased cost; provided, however, that if such changes unreasonably increased the cost of the building beyond what might reasonably be within the contemplation of the parties at the time of making the contract, such unreasonable changes would have the effect of discharging the surety. It is for you to say whether the changes and additions shown by the evidence were unreasonable or such as would not ordinarily in a building contract of this character be considered as likely or probable. If you believe from the evidence that such changes and additions were unreasonable, you should find for the defendant O'Rourke. If, however, you believe, considering all of the circumstances, that they were reasonable and such as would be likely to arise in contracts of this nature, the defendant, O'Rourke would not on that account be discharged. In considering whether the changes were reasonable or not you may, in connection with all the circumstances, take into consideration the relative cost of the building, as originally planned, and of the amount of the changes made in the plans." The surety could not properly ask, in the face of express provisions admitting of changes being made, that he should be protected against such changes, so long as they were reasonable and such as when the contract was made might have been contemplated as falling within the reservation of the right to make changes as above expressed. For the reasons hereinbefore stated the judgment of the district court is

REVERSED.