SCHOOL DISTRICT NO. 65R OF LINCOLN COUNTY, NEBRASKA, A BODY CORPORATE, APPELLEE, V. UNIVERSAL SURETY COMPANY, LINCOLN, NEBRASKA, A CORPORATION, APPELLANT.

135 N. W. 2d 232

Filed May 21, 1965. No. 35880.

Maupin, Dent, Kay & Satterfield, Clinton J. Gatz, Donald E. Girard, and Rady A. Johnson, for appellant.

Murphy, Pederson & Piccolo and James E. Schneider, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

WHITE, C. J.

This is a suit against a surety on a builder's bond. The juncture of a sand and gravel roof deck with the higher outside or parapet wall was defectively constructed and was not in accordance with the specifications. The wall was not high enough above the roof deck. Flashings and counter flashings were not properly installed, were too low, and were not properly covered. The stone coping on top of the wall was not properly mortared and water leaked into the wall

underneath the stone coping. Drain scuppers connecting to downspouts were improperly sealed and welded, and water leaked down through or inside of the wall into the interior of the building. Construction of the building took place in 1955 and 1956. Final payment on the contract was made in November and December 1956 and without knowledge by the School District of these defects. The architect authorized final payment after inspection of the building. The School District discovered the defects in about March 1957 and contracted for and had the defects corrected in October or November 1959. Two layers of brick were required to build the outside wall to the proper height. Then, the coping, flashings, cant strip, and other structures were installed to properly guard against water leaking from the roof. The reasonable cost for remedying these defects in workmanship and for failure to build in accordance with the specifications was in the sum of $2,800. The School District recovered this amount in this action and the defendant surety company has appealed.

Liability in this case is governed by the contract between the parties. The bond itself guarantees the faithful performance of the contract and agrees to save the owner harmless from any damages by reason of the contractor's failure to do so. By its terms, the plans, specifications, and drawings were incorporated into the surety bond contract. The specifications detailed the duties of the architect in the supervision of the building contract. The general principles of the law involved are that the surety is bound in the manner and to the extent provided in the obligation. A builder's bond is construed most strongly against the surety and in favor of the indemnity which the obligee has reasonable grounds to expect. Brennan v. Clark, 29 Neb. 385, 45 N. W. 472; Sun Ins. Co. v. Aetna Ins. Co., 169 Neb. 94, 98 N. W. 2d 692; 50 Am. Jur., Suretyship, § 318, p. 1112.

Article 16 of the specifications provided as follows: "Neither the final certificate nor payment nor any pro-

vision in the Contract Document *shall relieve the Contractor of responsibility for negligence or faulty materials or workmanship within the extent and period provided by law,* and upon the written notice he shall remedy any defects due thereto and pay for any damage to other work resulting therefrom. All questions arising from this article shall be decided under Article 10 and 45." (Emphasis supplied.)

Article 27 of the specifications provided in part as follows: *"No certificate issued for payment made to the Contractor nor partial nor entire use or Occupancy of the Work by the Owner shall be an acceptance of any work or materials not in accordance with this Contract.* The making and acceptance of final payment shall constitute a waiver of all claims by the Owner; *otherwise than under Article 16 and 29,* of these conditions or *under requirements of the specifications,* and of all claims by the Contractor, except those previously made and still unsettled." (Emphasis supplied.)

The defects were discovered by the School District 3 or 4 months after completion of the building and the final payment. A detailing of the evidence is not necessary. It conclusively establishes faulty workmanship in the installation of the flashings, negligence in the performance of the work, and an entire failure to construct the wall and roof juncture in accordance with the plans and specifications. It would therefore seem apparent, under the plain import of the surety's obligation as set out above, that the plaintiff is entitled to recovery.

But, the defendant argues that the plaintiff made an unauthorized final payment to the contractor and that this constituted a surrender of security to the surety's damage. The defendant further argues that under the contract it was entitled to the protection of a payment based upon an architect's final certificate. The contract provided that payments were to be made to the contractor and were to be based upon the submitted estimates of the contractor and approval by the architect.

Exhibit 18 is the contractor's final estimate. It states: "Estimate No. 20 (Final)." It shows a final balance of $14,134.43. The record shows that a previous balance of $209,374.30 had been paid in accordance with the submitted written progress estimates. This final estimate was signed by the contractor and written thereon is an approval and the signature of the architect dated October 23, 1956. Pursuant to this written approval, the balance of the contract was paid by the plaintiff, the last payment in the amount of $50 being made on December 3, 1956. This money was paid with the understanding that certain trivial items on the contract requiring completion would be finished. None of these items are involved in this controversy. The defendant surety company's contention that the plaintiff made an unauthorized payment under the contract cannot be sustained. The architect testified as follows: "Q. When the work on the roof and the walls, and the coping, flashing and the scuppers and drains was completed, did your inspection show the defects that we have described in the evidence here today? A. No; it was general inspection; we looked the building over, of course, for the final inspection. Q. You couldn't by an ordinary visual inspection see these defects, could you, at that time? A. No. Q. That would be in the fall of 1956? A. That is correct. Q. Now is this final estimate, Exhibit 18, and which is called a final estimate, does that serve as a final certificate as far as an architect is concerned? * * * A. At that time we were using final estimates—approval of final estimates at the conclusion of the project. Q. That would be the custom in the business—in the construction business at that time in this community, is that right? A. In this area. Q. Use it as the final certificate? A. In this area."

The contract did not provide for notice to the surety or approval by the surety of the final payment. Exhibit 18, in substance, complied with the requirements of the contract as to the final certificate under the evidence.

Failure to comply with some of the formal requirements becomes immaterial. No notice was required to the surety and the above testimony is conclusive that the architect himself intended it to be a final certificate and that final payment was authorized as the result of it. The plaintiff made the final payment after this written authorization and did not breach the contract in this respect by making an unauthorized payment. Defendant relies solely on O'Rourke v. Burke, 44 Neb. 821, 63 N. W. 17. But, in that case it was specifically held that it was shown there never was a certificate made by the architect that would justify the owner's payments. This argument fails, however, for another more cogent reason. The surety is bound by the contract with the principal and it especially provides, in Article 16 and in Article 27, that either payment or a certificate for payment does not relieve the contractor (and, therefore, the surety) of responsibility for negligence, faulty workmanship, or failure to build in accordance with the specifications. There is no merit to this contention.

Defendant's next contention is interwoven with and overlaps the one previously mentioned. The surety next changes position and argues that there was a final certificate by the architect; that therefore there was full acceptance of the building in the condition that it was in; that the School District accepted and used the building for several years; and that because of all of this the plaintiff School District is estopped from recovering for defective workmanship and failure to build the roof in accordance with the plans and specifications. Defendant cites many persuasive cases but an examination of them reveals that the facts or the contract provisions as to the conclusiveness of the architect's certificate are different in these cases. The substance of defendant's argument is that the architect was negligent in not discovering the defects complained of and that responsibility for these defects was, therefore, imputed to the owner School District. The scheme embodied in

this contract, strictly construed against the surety, and the laws applicable do not sustain this contention. We point out that Article 9 of the specifications provides that the architect is not the agent of the owner except as especially provided. The surety is bound by Articles 16 and 27, hereinbefore quoted and now referred to, which specifically protect the School District owner and reserve to it its right of recovery for negligence, faulty workmanship, and failure to build in accordance with the specifications, despite the final certificate of the architect, the making or acceptance of payment, or the entire use and occupancy of the property. The contention of the defendant would require us to rewrite this contract. The contract does not bind the owner for failure of the architect to discover the defects involved here. On the contrary, it provides a plan for inspecting and checking by an architect for the mutual benefit of both parties. The contract language quoted reserves to the School District owner the right to recover and no exception is provided for the failure of the architect to discover the defects. If the parties intended that the architect's certificate or approval be binding or that the owner would be bound by failure of the architect to discover the defects, it would have been easy to include this in the terms of the contract. We see no reason for not enforcing this contract strictly according to its terms. It is not pleaded nor contended that there was any fraud on the part of the School District. It made the final payment following the written approval of the architect and is now relying on rights of recovery expressly reserved to it in the contract and specifications which the surety accepted as part of its contract and is strictly binding on it. A case directly in point is Hutchinson v. Bohnsack School Dist., 51 N. D. 165, 199 N. W. 484. In that case the contract was to install a hot water heating plant. The plant was installed, the architect issued a final certificate, full payment was made, and the school district accepted and used the plant. The

provisions of the specifications as to the architect and payments were almost verbatim with the present case. The contentions of the defendant were the same in substance. Said the court: *"The appellants contend that the architect was the agent of the owner; that under the terms of the contract, his approval and acceptance of the work done thereunder by the appellants and the issuance by him of a final certificate was conclusive upon the respondent.* * * * Article 9 of the contract defines the status and authority of the architect (the same as in the present case). Article 16 provides that 'Neither the final certificate nor payment shall relieve the contractor of responsibility for faulty materials or workmanship,' and this provision is reinforced by page 12-M of the specifications. It is also stipulated by article 27 that *'No certificate issued nor payment made to the contractor nor partial or entire use or occupancy of the work by the owner shall be an acceptance of any work or materials not in accordance with this contract.* The making and acceptance of the final payment shall constitute a waiver of all claims by the owner otherwise *than under articles 16 and 29 of these conditions or under requirements of the specifications.'* Thus it is made plain that the issuance of the final certificate, payment thereunder and the use of the work does not waive any claim because of faulty materials or workmanship or on account of failure to comply with the specifications." (Emphasis supplied.)

As pointed out, these provisions of the contract and specifications were part of the surety's contract. To the plaintiff it sustained the relation of guarantor and it is bound in the manner and extent therein provided. O'Rourke v. Burke, *supra;* Brennan v. Clark, *supra.* The contract of a surety company, acting for hire, will be strictly construed most strongly against a compensated surety and in favor of an obligee. Sun Ins. Co. v. Aetna Ins. Co., *supra;* 50 Am. Jur., Suretyship, § 318, p. 1112.

Each case must be considered upon its own facts and

under the particular provisions of the contract and specifications. We have no doubt that in a proper case, unauthorized payment without an architect's certificate will protect a surety pro tanto to the extent of the amount of the unauthorized payment. But, the parties may agree that the certificate of an architect shall not be conclusive and that the surety and the contractor are bound nevertheless. In Consaul v. Sheldon, 35 Neb. 247, 52 N. W. 1104, this court stated: "While each of these contracts provides for the payment to the contractor, as the work progressed, eighty per cent of the contract price, upon the certificate of the architect to the effect that the work is done in strict accordance with the drawings and specifications, and that he considered the payments justly due, each also contained the further stipulation, which is not found in either of the contracts before the court in the cases alluded to, that *'said certificate, however, in no way lessening the total and final responsibility of the contractor*, neither shall it exempt the contractor from liability to replace work, if it be afterwards discovered to have been done ill or not, according to the drawings and specifications, either in execution or materials.' *The parties having by this clause agreed that the certificate of the architect should not be conclusive, it was not error for the court to refuse to charge the jury as requested by the eighteenth instruction.* To have done so would have been prejudicial to the plaintiff." (Emphasis supplied.)

Defendant argues laches and undue delay to its prejudice. It is true that the defects were discovered on or about March 1, 1957; that repairs were not made until October 1959; and that this action was instituted on March 22, 1960. But, this is a law action with a 5-year period of limitations. The plaintiff School District had no duty to give notice to the surety on the bond under the terms of the contract or the law. There was no duty of the plaintiff to notify the defendant of the default of the principal contractor. There is no need to proceed

against the principal first or give notice to the surety of breach in the absence of a special agreement to that effect. 50 Am. Jur., Suretyship, § 175, p. 1018, § 42, p. 933; 17 Am. Jur. 2d, Contractors' Bonds, § 30, p. 212.

The trial court allowed interest on the judgment from November 6, 1956, on the theory that that was the date of the default or breach. This was error. Interest on damages for breach of a building contract, where the amount of the claim is not known or determinable, runs from the date of the rendition of the judgment. Gee v. City of Sutton, 149 Neb. 603, 31 N. W. 2d 747; Reorganized Church of Jesus Christ of the Latter Day Saints v. Universal Surety Co., 177 Neb. 60, 128 N. W. 2d 361. Interest should be allowed from the date of the rendition of the judgment for $2,800 in the district court.

Plaintiff, under section 44-359, R. R. S. 1943, is allowed an additional attorneys' fee in this court in the sum of $300. The judgment of the district court is affirmed as modified in this opinion. Costs are taxed to defendant.

AFFIRMED AS MODIFIED.