Johnson, J.
The circuit court, in entering its judgment, deducted from the judgment of the common pleas seven items for extras, which amounted, with interest thereon, to the sum of $20,376.36, and affirmed the balance of the judgment,- amounting to $21,506.10. It found that the common pleas court erred in its construction of Clause 6 of the contract between the Noel Company and the Expanded Company, and in charging the jury “that for the making of -the changes provided for in said sixth clause of the *432 contract between the Noel Company and the Expanded Metal Fire-Proofing Company, no written order or orders were required.” Clause 6 is as follows:
“The party of the second part further agrees that in the event of any changes being made by the architect or owner in the plans and specifications, affecting any of the work or materials herein agreed to be done, furnished and set in place, such changes shall be assented to and executed by the party of the second part, upon condition that party of the first part shall pay for same at the fair market price, if said changes add to the cost of the work, and if such changes decrease the cost of the work, a proportionate allowance shall be made to the party of the first part, without in any way invalidating, changing or avoiding this contract, and if such changes cause delay to the party of the second part, additional time to be extended by party of the first in which to perform the work.”
The preamble of the contract recites that the Noel Company had entered into a contract with the Cash Register Company for the construction of the building referred to, and provided “the said contract, together with the plans, drawings and specifications therein referred to, are made part hereof to the same extent as if herein fully written.”
In the third clause of the Cash Register contract with the Noel Company, it is provided as follows:
*433 “No alterations shall be made in said specifications or drawing's nor shall there be any deviation in the doing of the work or furnishing the material covered by this contract from the manner, character or quality designated and required by said drawings and specifications, unless such alterations or deviations be authorized or required upon the written order of said engineer of works, the extra amount to be paid by said owner or the credit to be allowed by said contractor on account of said alterations or deviations being stated therein. But should the owner and contractor not be able to agree as to such amount to be paid or allowed, the work shall go on under the order provided for, and the determination of said amount shall be referred for arbitration as provided for in paragraph fourteen (14) of this contract.”
The contention, substantially, of the Expanded Company is that, inasmuch as the sixth clause of its contract with the Noel Company does not specifically require that the changes provided for in said cause shall be ordered in writing, no such written order was necessary. That the provision in the preamble, that the Cash Register contract, with its plans, drawings and specifications, are made part of the Expanded Metal Company contract • cannot control in the matter of the extras, because the specific provision in the Expanded Company contract for extras is inconsistent with the provision in the Cash Register contract with reference thereto. That in such case, the actual contract between the parties must prevail.
*434 Under the sweeping provision that the entire Cash Register contract, with its plans, drawings and specifications, are made a part of the Expanded Metal Company contract, the former became part and parcel of the latter agreement, in so far as their provisions are consistent. No provision of a contract is to be disregarded as inconsistent with other provisions unless no other reasonable construction is possible. A special provision will be held to override a general provision only where the two cannot stand together.
It is clear that the purpose of Clause 6 of the sub-contract was to require the sub-contractor to “assent to and execute” the changes ordered by the owner, and to provide a plan by which the sub-contractor should be paid for the making of such changes. The principal contract provided for the fixing of the amount to be paid by the owner to the principal contractor for extras, and, in as much as the sub-contractor was not a party to such arrangement, it would not be fair to compel him to be bound by the price so fixed. Therefore, in justice to him, the provision was added that he should be paid the fair market price and should'not be subjected to claims for delay, if the changes caused delay. It must be noted that the Expanded Metal Company, in its contract, bound itself to “assent to and execute” any changes which the owner might make, but with knowledge that any such changes could be made by the owner only on a written order to the principal contractor, in which the amount to be *435 paid was provided for, thus protecting the interests of all concerned.
We think the “change being made by the owner,” referred to in Clause 6, and which the sub-contractor bound itself to assent to, is only such a change as the owner was entitled to make under its contract with the principal contractor, and which was made in writing in accordance therewith, the terms of which the sub-contractor had embodied in its own contract. Otherwise, the owner could order extras without reference to their value and without reference to the requirements of his contract with the principal contractor, and the sub-contractor could execute them and hold the principal contractor to payment for them without the former having been, in any way, a party to the arrangement. Clause 6 of the sub-contract is not inconsistent with Clause 3 of the principal contract, when the two are considered in view of the object each was to subserve.
A consideration of all of the provisions of the contract leads us to conclude that the parties intended that the owner could not order changes to which either the principal contractor or the subcontractor was bound to assent, or for which the sub-contractor would have a valid claim, unless the order was in writing, or unless this requirement was waived by the parties in some manner by which they were bound.
The circuit court found that the error of the common pleas, in construing the contract, affected *436 only the following items of extras, included in the verdict of the jury:
(3) For changes in corner columns, the sum of.................$ 327.60
(4) For extra steel in parapet walls in main building, the sum of.. 130.45
(5) For change in parapet walls of wings .................... 99.90
(6) For extra concrete parapet walls of wings................... 40.50
(7) For wrought iron pipes through the floor slabs.............. 980.00
(8) For tearing nine columns, first floor, and changing forms in connection with curtain walls. 4,000.00
(10) For extra rods in beams and extra size of beams......... 12,340.00
The verdict of the jury was not a general one on the issues between the parties in favor of the Expanded Metal Company, but it named specific items, among which were those above stated, and found the total amount due.
It is contended, substantially, by the Expanded Metal Company, that the conduct of all parties concerned as the work progressed was such as to amount to a waiver in law of the requirements that the orders for alterations and extras should be made in writing, if the court should find that written orders were required.
As to Item No. 7, “for wrought iron pipes through floor slabs, $980.00,” the Expanded Com *437 pany claimed it was not required by its contract to furnish the wrought iron pipes referred to. That is, that the pipes were not included in the specified material which it was to furnish. There was a dispute between Mr. Ramsey of the Expanded Company, and the Noel Company as to this, and considerable evidence was offered touching it. The undisputed testimony shows that the pipes were furnished by the Expanded Metal Company. The Noel Company was bound to furnish them as between it and the Cash Register Company. In its pleadings, the Expanded Company claimed that it had furnished these pipes and that they were of the value as stated, and, on the issue made by the pleadings, the jury found as to this item in favor of the Expanded Company. This item, not being an extra ordered by the owner, Clauses 3 and 6 of the contracts have no application, and the error of the court in its charge, as found by the circuit court, could have, in no way, affected the finding of the jury on the issue made, and it should have been allowed to stand.
Item 8 of the verdict, “for tearing out nine columns, first floor, and changing forms in con-, nection with curtain walls, $4,000.00," was also the subject of controversy between the parties.' The Expanded Company claimed that, after the work had progressed for some time, the Cash Register Company made and delivered a written order to the Noel Construction Company,^ as follows:
*438 “Noel Construction Company.
“Stop pouring concrete columns separate from curtain walls. . Change forms so that curtain walls will be poured same time as columns.
“National Cash Register Company,
“By F. E. Chester.”
This order was endorsed on the back, “To the Expanded Metal Fire-Proofing Company,” signed, “Noel Construction Company, per Gobel.”
In connection with this order, the Expanded Company offered in evidence a drawing made by the engineer of the Cash Register Company, indicating the process to be followed pursuant to the order above referred to. The Noel Company claimed, as to this order and drawing, that it was made for the purpose of requiring the Expanded Company to comply with the original plans, not for the purpose of making a change therein, and that it is not such a written order as contemplated by the contract.
Considerable testimony, touching this contention, was offered by the parties, and the jury found in favor of the Expanded Company, specifically allowing this item, as above stated. On the question as to whether it was such an order as comes within the provisions of Clause 3 of the principal contract, it is insisted that it does not comply with the provisions therein that the extra amount to be paid for said change shall be stated in the order. But it must be noted that Clause 3 contains another provision; namely, that the failure of the owner and contractor to agree as to the amount to be paid for alterations shall not operate *439 to delay the work, and the amount to be paid for them shall be thereafter fixed by arbitration under the contract. So that the sub-contractor receiving such an order was required to “assent to and execute” the order without inquiring as to the amount, or the method by which the principal contractor was to be paid by the owner. The subcontractor’s compensation would, of course, be ascertained under Clause 6 of his own contract, which provides that he shall be paid the fair market price. We, therefore, think that, as to this item, the error of the common pleas court in its charge to the jury could not have been prejudicial to the Noel Company.
Another element included in the verdict of the jury, which was deducted from the amount of the judgment by the circuit court, was No. 10, “for extra rods in beams and extra sizes of beams, $12,340.00.” This is the largest and most important element involved in the controversy. It is shown by the testimony of the witness Pitkin that extensive changes in the plans were made by the Cash Register Company, which required a large amount of extra rods' and beams in the construction of the building; the amount of excess steel being 288,711 pounds; that detailed drawings and plans of these changes were made, to be used by the Expanded Company, as its instructions in the carrying out of such alterations. These detailed plans were approved by Mr. Waldron, the engineer of the Cash Register Company, in charge of the work. All of the changes, detailed drawings and plans were made and used and complied *440 with, with the full knowledge of the owner and principal contractor. These detailed plans and drawings were offered in evidence. It is shown by the record that the extra material and work required thereby were furnished by the sub-contractor, and that they were of the value claimed. It is familiar law that stipulations in written contracts may be waived by the parties, and that a construction placed by the parties upon a written contract in the progress of its performance, with full knowledge of all the circumstances, will be binding. Ashley v. Henahan, 56 Ohio St., 559; Campbell v. Kimball, 87 Neb., 309; Cunningham v. Fourth Baptist Church, 159 Pa. St., 620; O’Keefe v. St. Francis’s Church, 59 Conn., 551; 6 Cyc., 77; Norwood v. Lathrop, 178 Mass., 208; Board of Commissioners v. Gibson, 158 Ind., 471. The rule is peculiarly just when applied to building contracts, when changes are made, the necessity for which develops as the work progresses and while the parties are intent on the accomplishment of the undertaking, no fraud or undue advantage being shown.
No formal order, written in words, was given ' for these extras, but we think that the detailed drawings referred to, which show the additional rods and reinforcements, with the written approval thereon of the engineers in charge, taken in connection with the conduct of all parties concerned with reference to them, were the equivalent of a written instruction and amounted to a waiver, of a more formal order. In fact, we think it might reasonably be said to be a writing which was in *441 compliance with the object and spirit of the provision of the contract, which required the change to be ordered in writing. It was a drawing made upon paper clearly outlined and giving the details and changes which the owner required, approved by his engineer, and which he was bound to pay for. And, although the price to be paid for them was not named above the signature of the engineer or agreed upon by the parties, yet, as already shown, the naming of the price to be paid for the extra was not an indispensable element in the written order required by Paragraph 3 of the original contract. We think that, from the facts shown in the record with reference to this item, substantial justice was done between the parties in the finding of the jury.
As to Items 3, 4, 5 and 6, which the jury specifically found in favor of the sub-contractor, the changes therein referred to appeared to have been made without any writing or other specification or. definite requirement therefor. We think the circuit court correctly deducted the amounts of these items from the judgment rendered by the common pleas court.
The Noel Construction Company has filed a cross-petition in error, contending that the circuit court erred in affirming any part of the judgment of the court of common pleas, and especially in affirming the judgment of the latter court in favor of plaintiff on the ninth finding in the verdict of the jury in the sum of $2,388.00, for extra labor on sand and gravel. The extra labor referred to in this item was not such an extra as was involved *442 in the contract with the owner of the property. The gravel was to be provided for the Expanded Metal Company on the site of the building. The issue was raised by the claim of the Expanded Metal Company that this had not been done, and that it was compelled to secure the proper quality of sand and gravel itself. This sand and gravel was required by the original contract because that contract could not have been complied with without it. The plans and specifications required it. Therefore, the issue as to this item was simply one of fact to be submitted to the jury as to-whether or not, as between the Noel Company and the Expanded Company, the latter had performed this labor under the circumstances and in the manner described. On this issue, the jury found in favor of the Expanded Company, and the circuit court correctly affirmed the judgment of the common pleas court as to this item.
Another assignment of error made by the Noel Company relates to its claim for liquidated damages for $8,000.00, which it allowed the Cash Register Company for delays which were caused by the Expanded Metal Company. All of the allegations of the Noel Company, in connection with this matter, were denied by the Expanded Metal Company. It asserts that the deláys were caused by the alterations ordered by the owner; that it never had notice of any arrangement to compromise the claim of the Cash Register Company; that it was not a party thereto; that the amount fixed was purely arbitrary, and was not binding on it.
*443 Much testimony was offered by the parties on the issue made by the pleadings in reference to the delays and the claim for liquidated damages therefor and the settlement thereof. It is insisted by the Noel Company that the court erred in its charge to the jury with reference to this issue. The court charged that the burden of proof was on the Noel Company to establish its claim that the delay was caused by the Expanded Company; that, by reason thereof, the Noel Company was obliged to pay or allow the Cash Register Company damages therefor; that the amount was reasonable and could have been recovered by the Cash Register Company against the Noel Company under the contract in an action at law; and that the number of days of such delay, including every working day, was forty days. The testimony showed that the Cash Register Company had originally made a claim for a much larger amount, and had claimed that there was a great many more days’ delay than forty, and that, after many conferences, there was a final conference between the Cash Register Company and the Noel Company, in which it was arranged that the Cash Register Company should be allowed for forty days’ delay at $200.00 per day.
Considering the issues made and the testimony offered by the parties concerning them, we think that the charge of the court was correct.
On a full consideration of the whole case, we conclude that the judgment of the circuit court should be modified in this respect, that it should have reduced the amount of the judgment of the *444 court of common pleas by deducting therefrom the 3d, 4th, 5th and 6th items, as found by the jury in favor of the Expanded Metal Company, and should have affirmed that judgment in all other respects.
The judgment of the circuit court will be modified, as indicated.

Judgment modified.

Shauck, C. J., Donahue, Wanamaker, Newman and Wilkin, JJ., concur.