SCHOOL DISTRICT OF BEATRICE V. THOMAS P. THOMAS.

FILED JUNE 3, 1897.   No. 7295.

1. Building Contracts: RIGHTS OF SUBCONTRACTOR. A subcontractor, between whom and the employer of the contractor there is no privity of contract, cannot, as a matter of right,—merely because employed by the contractor to perform a portion of the labor contracted for,—if not paid by the contractor, demand payment of the employer, and, on refusal, maintain suit against the employer therefor.

2. ———: ———: ERECTION OF SCHOOLHOUSES. A contract with a school district for the erection of two schoolhouses provided that estimates of the sums due the contractor be made by an architect as the work progressed and 85 per cent of such estimates paid at the time made and presented; 15 per cent of the amount of estimates to be retained by the school district for a stated period of time, for the expressed purposes of insuring the district that all claims of subcontractors and laborers or others be fully paid by the contractor; also to insure the faithful and full completion of the buildings according to contract. Held, Not to constitute the school district primarily liable to a subcontractor for the sums thus retained, nor to constitute the district a trustee of such funds for the benefit of the subcontractor, nor to authorize the subcontractor to interfere in a suit at law by him against the district, in the retention of such funds by it or application in the subservience of the purposes to which they were assigned by the contract.

3. ———: ———: ———: BONDSMEN. The contractor abandoned the work and his contract. His bondsmen took charge and management of the completion of the buildings and fulfillment of the contract, and an additional contract was entered into between them, the subcontractor, and the school district. Held, This latter contract became of force and binding on all parties, including the school district; also that it provided for payment of all subsequent estimates of amounts due on the buildings for work by a subcon-

tractor to be made directly to him, and this to apply to the whole sum of any and all such estimates, inclusive of the 15 per cent which was to be retained by the district under the original contract and by the original contractor under the contract of the subcontractor.

4. ———: ———: ———. The evidence *held* to show that during a short time the district had charge of the work on the buildings it had paid the defendant in error in full for all work performed and material furnished by him during such time. *Held, further,* That the evidence discloses that the extras, both labor and material, were included in estimates made during the progress of the work and paid for conformably to the terms of the contract, viz., 85 per cent at the times of estimates and 15 per cent retained.

5. **Excessive Judgment:** REMITTITUR. *Held,* That the verdict and judgment were $1,021.97 in excess of the true amount. Defendant in error is given leave to file a remittitur of said sum as of the date of the judgment, within a stated time; if condition is complied with, the judgment, as modified, to stand affirmed. On non-compliance with the condition, the judgment to stand reversed and the cause remanded.

ERROR from the district court of Gage county. Tried below before BUSH, J. *Affirmed upon filing remittitur.*

*L. M. Pemberton* and *George A. Murphy,* for plaintiff in error.

*R. W. Sabin* and *Alfred Hazlett, contra.*

HARRISON, J.

During the year 1891 the plaintiff in error, the school district of Beatrice, entered into a contract with one W. C. Smith to erect for it two schoolhouses, the amount to be paid therefor, as expressed in the contract, being the sum of $14,605. W. C. Smith, at or about the same time, entered in a contract with the defendant in error by which the party last mentioned agreed to do all grading and excavating, also all stone and brick work necessary to be done in or about the erection of the two schoolhouses, and was to receive therefor the sum of $8,200. At sometime during the progress of the work by the parties on the schoolhouses, W. C. Smith abandoned the contract and absconded, and the completion of the work

was assumed by parties who had signed and become his sureties on a bond conditioned for a proper completion of the schoolhouses; but they did not finish the buildings. The district finally assumed the burden and completed them, availing itself of the assistance of defendant in error. This action was instituted in the district court of Gage county by defendant in error to recover the sum of $2,585.50, alleged to be the balance due him for services performed and material furnished on and for the buildings under the original contract; also while the bondsmen of Smith, the first contractor, were in charge of the erection of the buildings and while the district had the management. There was included in the amount claimed some items for extra labor and material aggregating $1,152.20. Issues were joined and as the results of a trial the defendant in error was awarded a verdict and judgment in the sum of $1,596.82. The school district asks a review in this court of the proceedings had during the trial.

During the progress of the work under the contract there had been labor performed and material furnished by defendant in error as subcontractor, on which estimates had been made by the architect and delivered to the main contractor, aggregating an amount of which the fifteen per cent retained by the school district was in total $817.50. This last mentioned amount was one of the items of the defendant in error's claim of which he sought a recovery in this action. One question to be settled is, could he assert and maintain this portion of his demand? It cannot be said that he was entitled thereto because of any contract with the district, for he had none with it. His contract was with Smith, the original contractor. By the terms of the contracts defendant in error was to receive payment for his services and materials from the contractor, and the contractor was to be paid by the school district. That a party contracts with one to perform labor and the one employs another to do the work does not authorize the latter after

performance as a matter of right to demand payment of the original party employer and on refusal maintain suit for it. (Clark, Contracts, pp. 508-511.) Neither can it be said that the retention of the amount of the estimates as they were made, presented, and in part paid, raised the right in the subcontractor to demand any part of such sum as his due because it had its source in labor performed or materials furnished by him; nor did the district become a trustee for the subcontractor and thus a right originate by which the subcontractor became vested with a claim against the district for such sum.

It is also argued that the rule "Where a party makes a promise to another for the benefit of a third person, such third person may avail himself of the promise and bring an action thereon, although the consideration did not move direct to him," is applicable and may be invoked by the defendant in error as against the school district. There were no portions or elements of the contract between Smith, the original contractor, and the district which can by any allowable process of construction be said to contain any promise by the district, made for the benefit of the subcontractor, on which he would be entitled to institute a suit against the district; hence the doctrine to which reference has been made is of no force here.

The agreement of the district with the original contractor to the extent it provided for the retention of the fifteen per cent of the amounts of estimates had several purposes, to insure the district against the claims of laborers and material men, that they should be paid by the contractor, also to enforce the completion of the buildings according to contract, all prior to the payment of the fifteen per cent retained. With the due course of fulfillment of either purpose, the defendant in error could not interfere in a direct suit at law, instituted by him against the school district. After the contractor abandoned this contract and departed this, so far as the record discloses, for another and unknown clime, his bondsmen

proceeded with the work under his contract, and at or about the time they assumed control, the following was executed and became of force, the subcontractor having insisted that if he continued in the performance of his contract in respect to the buildings, it must be arranged that he receive his pay directly from the school district:

"We, the bondsmen of W. C. Smith for the erection of the two schoolhouses in Beatrice, now under course of construction, hereby authorize and instruct T. P. Thomas, who has the excavation, stone and brick work from said Smith on said buildings, to go ahead with his part of said contract; and in consideration that said Thomas goes ahead and carries out his contract with said Smith, we agree to carry out the contract of said Smith with said Thomas, and as fast as the estimates are made upon the work of said Thomas, we authorize and order the school board of the city of Beatrice to pay the money on such estimates directly to said Thomas.

"Dated October 30, 1891."

On the instrument, over the signatures of all but one of the members of the school board, appeared the following: "We hereby accept the above order, but by doing so we do not in any manner release the bondsmen of said Smith, nor relieve them or him from liability on his contract or on his said bond." It is urged that this conferred the right on the subcontractor to collect the fifteen per cent, which had been retained by the school district, of the estimates made and paid in part as provided in the contract during the time the original contractor remained in charge. This, we think, is not tenable. The instrument, which we have just quoted, clearly refers to future and not past transactions, and could by no fair or even strained construction of its terms be given a meaning by which it could be said to be a direction or authorization by the bondsmen to pay the fifteen per cent due, or to become so on any of the past transactions to the subcontractor, and an agreement by the district so to do.

With regard to the other questions raised and argued

of and concerning the force and true import of the document which we have quoted, we will say that we are satisfied from the evidence that, although it lacked the signature of one of the trustees of the school district, that it became the contract of the district, or one by the terms and for the due performance of which the district was bound; and we are further convinced that the district was to make payments of all estimates in favor of the subcontractor, made after the execution and prevalence of this agreement, additional as it was to the original contract, and such payments to him were to include not only the first payment, or eighty-five per cent, but also the fifteen per cent of all such estimates, provided he completed all work and furnished all material contemplated by his contract.

Some labor was performed and material furnished by defendant in error after the bondsmen quit the work and the school district took charge of it.   One of the questions presented is with reference to this part of the account and its payment, whether only eighty-five per cent or all of it.   It is clear from the evidence bearing on this point that the whole of the account was paid.

It was also of the litigated quesions whether the extra labor and material performed and furnished by defendant in error were included in estimates made during the progress of the work, and payments therefor made under and conformably to the terms of the contract or were not so included and the whole sum due therefor remained unpaid to be recovered in this suit.   The evidence in the record before us, whatever the fact may have been, establishes that extras, both labor and material, were included in the estimates made and for which there were settlements as the buildings progressed.   There were methods of calculation within the evidence by which the jury could reach approximately the verdict rendered, each of which must have included the allowance to defendant ant in error of the $817.50, the fifteen per cent retained of the aggregate of estimates made, part paid to the original

contractor which should not have been figured in the verdict. There. must also have been included the amount of the fifteen per cent retained of the total sum of the estimates made during the time the bondsmen of the contractor were managing and directing the work. This per cent of such estimates amounts to $517.50, which, with interest added to the date of the verdict, gives us the sum of $574.85, which is all that the defendant in error was entitled to recover under any allowable calculation warranted by the pleadings and evidence.

The verdict was for $1,596.82, which, we must conclude, was $1,021.97 in excess of the proper amount. The defendant in error may file a remittitur within forty days of the last mentioned sum, $1,021.97, as of the date of the verdict, October 17, 1893. If he does so, the judgment, as thus modified, is affirmed. If he does not comply with the above stated condition the judgment stands reversed and the cause remanded.

JUDGMENT ACCORDINGLY.