CLELL D. CAMPBELL, APPELLEE, V. FRANK B. KIMBALL ET AL., APPELLANTS; GEORGE BERG ET AL., APPELLEES.

FILED JUNE 29, 1910.   No. 16,096.

1. **Mechanics' Liens:** SUBCONTRACTORS: LIABILITY FOR FILING FEES. Where a contractor for the construction of improvements upon real estate distributes portions of his contract to subcontractors, no contractual relation arises thereby between the owner and the subcontractors, the liens upon the property in favor of the subcontractors being given by law, and the completion of the work undertaken by the subcontractors creates a debt due from the contractor to them. - Upon the failure to pay said debt the contractor becomes liable to the subcontractors for the full amount which the subcontractors are entitled to receive. If the subcontractors find it necessary to file mechanics' liens, the contractor is also liable for the fees paid therefor. For these items the owner is not, ordinarily, liable.

2. ———: ———: ———. Where, in an action by a contractor and subcontractors to enforce mechanics' liens, the trial court charges

the above named items to the owner of the improved property, the amount thereof should be deducted from the sum due from such owner to the principal contractor.

3. ———: INTEREST. The amount finally found due from the owner of the improved property should draw interest at the legal rate (in the absence of a contract fixing a different rate) from the date the debt became due and payable.

4. Contracts: WAIVER OF PROVISIONS. Where a written contract between the owners of the property to be improved and the principal contractor provides that certain claims shall be presented in writing to the architects by the contractor within a specified time or they will not be allowed, that no alterations from the plans and specifications shall be made except upon the written order of the architects fixing the amount due thereon, that no extras shall be furnished except upon similar orders, these and like provisions, if ignored by the parties to the contract and the architects, will be ignored by the courts.

5. ———: TIME LIMIT: PAROL EXTENSION. Where a written agreement between the owners and principal contractor fixed the time limit within which the work is to be completed and after which damages shall be allowed if the work is not completed, it is within the power of the parties to change said time limit by oral agreement, afterward made, extending the time, and the courts will respect such change, made in good faith, and refuse damages suffered prior to the date fixed by the change.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed as modified.*

*T. F. A. Williams,* for appellants.

*Field, Ricketts & Ricketts, S. L. Geisthardt, Hall, Woods & Pound, Strode & Strode, Flansburg & Williams* and *J. R. Berry, contra.*

REESE, C. J.

This is an action to foreclose a mechanic's lien for material furnished and labor performed under a contract to remodel a theatre building in the city of Lincoln. The suit is by the contractor, who undertook to complete the work for the sum of $15,225. The contract was entered into June 15, 1907, and stipulated that

the work was to be completed on or before the 24th day of August of the same year, and if not completed on that date a deduction of $50 a day for the excess of time was to be made from the contract price. Certain mortgagees were made parties defendant; but as it was shown by their answers and the stipulation of the parties that the mortgages were not due, and as defendants were in no way in default in respect to them, they were not foreclosed. A number of subcontractors who had filed liens on the property of defendants upon which the work had been performed were also made parties defendant and filed their answers setting up their liens, but at the beginning of the trial it was stipulated in open court as to the amount due each, and that they were entitled to foreclosures, and, so far as any contest as to their claims is concerned, they also have dropped out of the case. The contest remains exclusively between plaintiff, the contractor, and defendants, the Kimballs, as owners of the property involved in the controversy. The work was not completed by the time fixed in the contract, nor for some time thereafter. Plaintiff's claim is based upon the alleged completion of the contract, and for a large number of "extras" in the way of material furnished and labor performed, but which need not be set out here in detail, while defendants claim damages for failure to complete the work within the proper time, for money expended in the employment of help in pushing the work, for parts of the details of the contract which were omitted by agreement, for damage caused by the delay by being compelled to cancel dates with theatrical companies, and for the stipulated $50 a day for all time after August 24 during which they were deprived of the use of the building. To these demands plaintiff replied that the delay was caused by the default of defendants in not surrendering possession of the property to plaintiff in order that he might proceed with the work, and in requiring so many changes from the plans and specifications, and the number of extras, not provided for in the contract, which were found to be necessary and

demanded by defendants. More specific reference to the details of the pleadings might be made, but it is thought that this general statement will be sufficient at this time. A trial was had in the district court involving the introduction of a large volume of evidence.

The decree is in part as follows: "Wherefore it is considered, ordered, adjudged and decreed by the court that the defendant George Berg, do have and recover from defendants William R. Kimball and Frank B. Kimball the sum of $380.40, and that defendant Hardy Furniture Company do have and recover from said defendants Kimball the sum of $13.95, and that defendants Searle & Chapin Lumber Company do have and recover from said defendants Kimball the sum of $683.06, and that defendant R. S. Young Building & Supply Company do have and recover from said defendants Kimball the sum of $629.76, and that plaintiff do have and recover from said defendants Kimball the sum of $2,529.17." This is arrived at by allowing plaintiff the contract price of $15,225 for the remodeling and rebuilding of the structure, to which is added the sum of $1,269.45 for extras, and deducting from the total the amount paid, the reduction resulting from change of plans, and the further sum of $775 for delay in the completion of the building other than delay caused by defendants. Defendants appeal. Plaintiff enters a cross-appeal. The assignments of error, in so far as they are deemed material, will be disposed of in the order presented by each in the briefs.

In ascertaining the several amounts due the subcontractors, the court added to their principal debts the fees for recording the liens, found the total of the same, and rendered judgment against the defendants therefor. Complaint is made of this action of the court. Complaint is also made of the manner of disposing of the interest due upon the subcontractors' claims. In this we are unable to detect any error. It must be conceded that there was no contractual relation between defendants and the subcontractors. That relation existed only be-

tween them and the principal contractor. It was the duty of the principal contractor to pay the amounts due his subcontractors as soon as their claims matured. The contract between defendants and plaintiff provided for monthly payments of 85 per cent. of the money earned by the contractor. The purpose of the payment of these instalments was to enable the contractor to pay for material and labor as the compensation therefor became due. Failing in this, he became liable to his subcontractors for all that the subcontractors might finally demand under the law. The owners of the property owed no personal duty to the subcontractors, except to see that the principal contractor was not paid in full until the demands of the subcontractors were provided for. Failing so to do, the property upon which the improvements were made would be held liable without reference to whether he owed the principal contractor or not, but within his contract price. Under section 11, art. I, ch. 54, Comp. St. 1909, the fees for filing the accounts in the office of the county clerk, or register of deeds, can be collected by the subcontractors, but these amounts should have been deducted from the decree in favor of plaintiff. The total of fees paid is $7.35. This is also provided for by article IX of the contract between plaintiff and defendants, which is as follows: "Art. IX. * * * If at any time there shall be evidence of any lien or claim for which, if established, the owners of the said premises might become liable, and which is chargeable to the contractor, the owners shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify them against such lien or claim. Should there prove to be any such claim after all payments are made, the contractor shall refund to the owners all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the contractor('s) default." To that extent the judgment of the district court will be modified.

It is next contended that "the district court erred in adjudging that appellants Kimball should pay interest on the entire balance found by the court to be due Campbell." If we understand defendants' contention we are unable to see any merit in it. Upon the completion of the work under the contract plaintiff was entitled to receive the amount then due him. If not paid, it would, in the absence of a contract providing otherwise, draw interest at the legal rate. True, in this case, the parties could not agree to an adjustment of their differences, and preferred to leave the striking of the balance for the purpose of ascertaining the amount then due to the court. But that sum, when ascertained, would draw interest from the time it became due under the contract. The decree does not inform us of the date from which the interest was computed. As we have seen, the contract provided for a deduction of $50 a day from the price to be paid for each day after August 24, during which time the work was not completed. It was also provided in the contract that no allowance should be made for delays caused by the default of the owners "unless a claim therefor is presented in writing to the architects within 48 hours after the occurrence of such delay," and that "no alterations shall be made in the work except upon the written order of the architect; the amount to be paid by the owners or allowed by the contractor by virtue of such alterations to be stated in said order." Had these provisions of the contract been observed by the parties to it during the progress of the work, it is clear enough that much trouble and expense might have been avoided and this suit never heard of; but the evidence from the beginning to the end shows, beyond all question, that they were wholly and entirely ignored by the architects and all parties to the contract. If changes or the supply of extras were desired by defendants, they ordered them verbally and the changes and extras were made and supplied. So, also, with the architects. We have not found that a single order for changes or extras was made in writing,

nor in many instances was anything said as to their cost.
The provisions above referred to might as well not have
been incorporated into the contract.   A great deal of time
and testimony during the trial were devoted to the mat-
ter of changes and extras.   We are unable to discover any
error in the record in this part of the case.   The failure
to observe the provisions of the contract rested with all
the parties, and it is too late now to enforce them.   These
observations practically dispose of the cross-appeal by
plaintiff upon the contention that "the court erred in
awarding damages against Campbell and in favor of the
Kimball Brothers for delay in completing the work," that
"the time specified within which the work was to be com-
pleted was waived by the Kimballs," and that the court
erred in its allowance for extras, the amount allowed not
being a just allowance.   It is true, in a sense, that the
time specified in which the work was to be completed was
waived by defendants, but, if so, it is equally true that
the extension was not without its limitation.   We think
it may be fairly inferred from the evidence that a short
time before the expiration of the time in the contract de-
fendants and the architects became convinced that it
would be impossible for plaintiff to finish the work within
the time so limited.   Upon an interview being had with
him, he agreed with them on another limitation fixed for
not later than September 21.   This involved the cancela-
tion of the theatrical contracts, and the work was not
completed so that the house could be profitably occupied
until long after that date, and that to the damage of de-
fendants.   Had this question been submitted to us in the
first instance, it is possible we might have come to a con-
clusion differing somewhat from that reached by the trial
court, but from an examination of the whole case we are
unable to detect any material deviation from the lines of
justice and equity except in the particulars herein above
noted.

The judgment of the district court will be modified to
the extent of deducting the said sum of $7.35 from the

judgment in plaintiff's favor, leaving due plaintiff from defendants the sum of $2,521.82, and for which amount judgment is entered, plus accrued interest. As thus modified, the judgment is affirmed; each party to pay his own costs in this court.

AFFIRMED AS MODIFIED.