FORD MOTOR COMPANY, Appellant,

v.

Loreto MONDRAGON, Appellee.

FORD MOTOR COMPANY, Appellant,

v.

FARMERS INSURANCE EXCHANGE, by Farmers Underwriters Association, Attorney-in-Fact, Appellee.

Nos. 16206, 16207.

United States Court of Appeals
Eighth Circuit.

Nov. 10, 1959.

Sherwin J. Markman and A. Arthur Davis, Des Moines, Iowa (Brody, Parker, Miller, Roberts & Thoma, Des Moines Iowa, was with them on the brief), for appellant.

James A. Lorentzen, Des Moines, Iowa (Frank S. Fillmore, Des Moines, Iowa, was with him on the brief), for appellees.

Before WOODROUGH, VAN OOSTERHOUT, and MATTHES, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

The two civil actions here involved, based upon established diversity of citi-

zenship jurisdiction, arise out of essentially the same facts. The actions were consolidated for trial and were tried to a jury. The jury returned a verdict for plaintiff in each action. Defendant's motions for directed verdict and for judgment n. o v. were overruled. Defendant has appealed from final judgments entered upon the verdicts.

Mondragon, plaintiff in Case No. 16,-206, purchased a new 1955 Ford Thunderbird, manufactured by the defendant, through a San Francisco, California, Ford dealer, receiving delivery thereof at defendant's factory in Dearborn, Michigan, on September 16, 1955. He drove his car to Chicago that night. On the morning of September 20, he left Chicago, driving his car west toward his home in San Francisco. A collision occurred about 4:30 o'clock P.M. that day between Mondragon's Ford and an automobile owned and operated by one Herman Wiggins at a sharp curve on highway 30 just west of Jefferson, Iowa.

Farmers Insurance Exchange, plaintiff in Case No. 16,207, carried liability insurance on Mondragon's automobile, and paid Wiggins and the occupants of his car $10,393.33 in settlement of claims they asserted against Mondragon. It is stipulated that such damages were properly paid. Farmers Insurance Exchange claims indemnity for such payment. It appears to be undisputed that the rights of Farmers Insurance Exchange on its claim are dependent upon the rights of Mondragon against the defendant, and, if Mondragon is not entitled to judgment, Farmers Insurance Exchange is not entitled to judgment.

Both plaintiffs claim that the collision was caused by defective brakes and safety equipment on the car sold to Mondragon, which defects were unknown to him, and assert liability against the defendant on the theories of negligence and implied warranty.

Defendant in its answer to each division of each of the causes of action specifically denied that Mondragon purchased the automobile from the defendant, that defendant was in any way neg-ligent in the manufacture and delivery of said automobile, that said automobile had defective brakes at any time prior to the collision, that if any defect in the brakes existed said defect proximately caused the collision, and that Mondragon was free from contributory negligence.

Many substantial errors are urged as bases for reversal. If the defendant is correct in its contention that the court erred in overruling its motions for directed verdict, the other errors urged need not be considered. We shall, therefore, first consider the directed verdict issue.

The defendant by its answers raised the issue that the automobile was not purchased directly from the defendant, but was purchased from one of its dealers. Apparently this was for the purpose of asserting that the purchaser could not recover from the manufacturer because of lack of privity. However, defendant in its reply brief concedes that it would be liable to the ultimate purchaser for any negligence in the manufacture or testing of its automobile. Defendant states:

"Appellees [plaintiffs] cite numerous decisions establishing the law that an automobile manufacturer may be liable to an ultimate purchaser for a *negligently* manufactured product. With this law appellant [defendant] has no quarrel."

Because of this concession a prolonged discussion on the subject of manufacturer liability would appear to be unnecessary. This court recently, in Ford Motor Co. v. Zahn, 265 F.2d 729, had occasion to consider the problem of the liability of the manufacturer. We there stated the scope of the manufacturer's liability as follows (at page 731):

"By force of law there is imposed upon the manufacturer of an article for sale or use the duty to exercise reasonable care to prevent defective conditions caused by a miscarriage in the manufacturing process. This duty requires reasonable skill and care in the process of manufacture and for *reasonable inspection*

*or tests* to discover defects. [Supporting authorities are cited.]"

Defendant in its motion for directed verdict made in each case at the close of the evidence and renewed after verdict urged that the plaintiffs were not entitled to recover because they had failed to prove that the defendant was negligen in any respect charged, that the evidence showed that plaintiff Mondragon was not free from contributory negligence, and that plaintiffs had failed to establish that the negligence, if any, on the part of the defendant was the proximate cause of the injuries complained of.[1]

The motions for directed verdict, including the renewal of the motion after verdict, were overruled. Timely appeal was taken from the judgment entered in each case. ·

The vital question in these cases is whether there is any substantial evidence to support a conclusion that any negligence which may have been established on the part of the defendant was the proximate cause of the injury and damage to the plaintiffs. Serious questions arise on the issue of any negligence on the part of the defendant, and on the freedom from contributory negligence issue, but we shall assume for the pur-

---

1. Among the grounds stated in the motion for directed verdict made at the close of the plaintiffs' evidence are the following:

"3. That it is a necessary allegation of plaintiffs' petition for them to prove that if there were a brake failure or a brake deficiency attributable to this defendant, that it was the proximate cause of the collision. There being no evidence to this effect, plaintiffs must of necessity fail in their causes of action. As an example, there is no competent evidence in this record that we have to submit to the jury that any brakes were, in fact, applied. Therefore, even if the Court assumes that any brakes were defective at the time of the collision, there is no evidence that any such defective brake was the proximate or a proximate cause of the collision, which is the foundation of these lawsuits. * * *

"5. The plaintiff has failed to prove the proximate cause, which they must prove, and that there is no competent evidence in this record that there were any defective brakes upon this automobile at the time of the accident and that the brakes were not working sufficiently at the time of this accident. The only evidence in this record is that in accordance with Professor Freeman's testimony, based upon the hypothetical question, that the fuel line rubbing against the brake line could have caused the spot. There is no evidence when this could have happened, where it could have happened or how it could have happened and how this could be attributed to the Ford Motor Company, so there being no evidence of proximate cause, we are purely in the realm of speculation, and the plaintiffs must fail in this action.

"6. It is the law to be applied in this court when circumstantial evidence, which

here is sought to prove the theory, that such circumstantial evidence must show that the theories sought to be proven are reasonably probable and more probable than any other theories based upon such evidence. The plaintiffs have failed utterly to meet this legal requirement in many respects. They have failed to meet this requirement substantially."

The motion made at the close of all of the evidence incorporated all grounds previously raised and adds the following:

"1. That on the complete record now before the Court the only competent evidence as to the proximate cause of this accident, and/or as to the time and manner of the occurrence of the wearing of the brake line, as subsequently discovered by the witness Essex is the expert opinions as testified to by the witnesses, Pfander, Marquart and Hood; that the only evidence of any reasonably probable theory based upon the circumstantial evidence as presented by the plaintiff is the testimony of these witnesses, which establish that the only reasonably probable theory is that the brake line was adequate and normal prior to the Mondragon accident and that any and all damage which occurred to same occurred at and subsequent to the time of said Mondragon accident; and that additionally in view of this evidence the plaintiffs have failed to show on the entire record:

"(a) That the defendant was in any way negligent.

"(b) That the brake line was defective at any time prior to the accident.

"(c) That the defective brakes if they existed were the proximate cause of the accident and the subsequent damages.

"(d) That the plaintiff, Mr. Mondragon, was free from contributory negligence."

pose of this appeal, without so deciding, that plaintiffs have made a jury question on such issues.

■ In order to recover for negligence the burden is upon the plaintiffs to prove that the alleged negligence is the proximate cause of their injury. In Fanelli v. Illinois Central R. Co., 246 Iowa, 661, 666, 69 N.W.2d 13, 19, the rule is thus stated:

"* * * mere negligence which appears to have no causal connection with the injury is not actionable. It must appear that the injury was the natural and probable consequence of the negligence, wrongful act, or breach of duty. * * *"

In Brewer v. Johnson, 247 Iowa 483, 72 N.W.2d 556, 558, the court states, "To be actionable, the negligence must be a proximate cause of the injury."

■ Before considering the evidence we shall discuss the test to be applied in determining the sufficiency of the evidence to support the verdict. The question of whether state or federal law controls in diversity cases on the issue of the sufficiency of the evidence to support a verdict has not been decided by the Supreme Court. Courts of appeal are not in agreement on this problem. Dick v. New York Life Ins. Co., 359 U.S. 437, 444–445, 79 S.Ct. 921, 3 L.Ed.2d 935. Our present case was tried by all parties on the basis that Iowa law controls. Under such circumstances, particularly where the state and federal standards are substantially alike, the Dick case advises that no determination be made on the question of the applicable law.

The evidence in our present case bearing on the proximate cause issue is all circumstantial. The Iowa rule with reference to the test of the sufficiency of circumstantial evidence to support a verdict has been liberalized in recent years. Iowa has abandoned the "exclusion of every other hypothesis rule" and now follows the "more reasonably probable rule." Soreide v. Vilas & Co., 247 Iowa 1139, 78 N.W.2d 41, 43; Bokhoven v. Hull, 247 Iowa 604, 75 N.W.2d 225, 227;

Little v. Watkins Motor Lines, 8 Cir., 256 F.2d 145, 149; Guyer v. Elger, 8 Cir., 216 F.2d 537, 539. The federal cases just cited involve the Iowa law. In the Bokhoven case, the court states (75 N.W.2d at page 227):

"* * * we are firmly committed to the rule that plaintiff's theory of causation need not be proved by evidence so clear as to exclude every other possible theory. The evidence must be such as to make that theory reasonably probable, not merely possible, and more probable than any other hypothesis based on such evidence. * * *"

It would appear that the test of the sufficiency of circumstantial evidence under federal law would be substantially the same. Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 339, 53 S.Ct. 391, 77 L.Ed. 819; Adair v. Reorganization Inv. Co., 8 Cir., 125 F.2d 901, 905; Cudahy Packing Co. v. N. L. R. B., 8 Cir., 116 F.2d 367, 371. In the Adair case, at page 905 of 125 F.2d, the court quotes from the Cudahy case as follows:

"'It is not necessary in establishing a necessary fact by circumstantial evidence that a party upon whom the burden of proof rests shall present evidence to dispel all contradictory inferences. It is necessary, however, that such party produce evidence of facts and circumstances which may be accepted by the trier of the fact as establishing with reasonable certainty the truth of the inference contended for.'"

The court then continues:

"If the proven facts give equal support to each of two inconsistent inferences then judgment must go against the party upon whom rests the necessity of sustaining one of these inferences. The essential inference cannot be left to conjecture and speculation. * * *"

■ The task of applying the law as above stated to the evidence remains. We must, of course, observe the well established rule that the party in whose

favor judgment has been entered is entitled to have the evidence viewed in the light most favorable to him, and is entitled to the benefit of all inferences that may reasonably be drawn from the evidence.

There is disputed evidence from which a jury could find that the fuel line on the car was installed too close to the brake fluid line, and that by reason thereof such lines at times could rub together, and that such contact could cause an abrasion on the brake line which might ultimately wear a hole in that line, with the resulting leakage of brake fluid which would render the brakes inoperative.

Plaintiffs' expert witnesses made repeated wear tests by placing the gas line in contact with the brake line, under various circumstances, upon testing devices they had rigged up. Only one of the experts expressed an opinion on the result of the tests. This opinion given in response to a hypothetical question is:

"On the basis of these tests I believe that the fuel line rubbing against the brake line could have caused the worn spot on the brake line."

We have no doubt that the expert opinion just stated forms a basis for a finding that the abrasion on the brake line could have been caused by the fuel line rubbing against the brake line.

On cross-examination the expert witness conceded that many variables, such as, pressure, number of strokes, length of stroke, abrasive matter, and other possibilities, would affect the rate of wear. It is not shown that the pressure, number of strokes, length of stroke, or other variables on the car were such as to produce the same rate of wear produced in the tests. The witness made no estimate as to time or mileage required to develop a leak in the brake line of the car under the conditions existing prior to the accident. At the time of the accident Mondragon's car had traveled about a thousand miles and had been out of the factory five days. The expert did not testify that it was reasonably likely that the rate of wear on the brake line of the car was such that a leak in the brake line would develop in such a use of the car.

The negligence, if any, of the defendant could not be the proximate cause of the damages unless it is established that a leak in the brake line rendering the brakes ineffective occurred prior to the accident. There is no substantial evidence that the brakes did not function properly prior to the accident. Mondragon's testimony is that the brakes operated normally up to and including the last time he used them, which was when he slowed down to make a curve 1100 feet north of the accident location. Witnesses who carefully examined the accident scene found no evidence of any brake fluid which might have leaked out. Evidence of the leakage of the brake fluid was first discovered in January of 1956, some four months after the date of the accident. Between the time of the accident, which caused extensive damage to the car involving repairs costing around $2,000, and the discovery of the leak, a number of things had happened. The car was towed into Jefferson. Several days later it was towed to Des Moines, a distance of some 80 miles. The front end of the car was elevated for towing purposes, the right wheel being some six inches off the ground and the left wheel about two feet. At the Des Moines repair shop the body was completely removed. The frame of the car was then removed and was replaced with a new one, which involved disassembling and reattaching a considerable amount of equipment. Among other things, the gas line was disconnected at the tank in the close vicinity of the place where the leak in the brake line developed. In the process of repairing the car the brakes had been bled and tested and found to be operating satisfactorily. The brakes were in working order when the car was taken to the paint shop. The defect in the brakes was not discovered until the car was returned from the paint shop. At that time evidence of leaked-out fluid

was found on the brake line and upon the housing to which the brake line was attached. It would seem that if a leak had occurred in the brake line prior to the accident evidence of it would have been discovered during the repair process, particularly at the time the body and frame of the car were removed, placing the brake line and housing in open view.

It is the defendant's contention that the leak in the brake line could have been caused or contributed to by the accident, the extensive towing of the car, or the repair operations.

Upon this record, we believe that the defendant's theory is at least as probable, if not more probable, than plaintiffs' theory.

Moreover, if the brakes were not applied by Mondragon immediately prior to the accident, any defect in the brakes could not have been a proximate cause of the accident. There is no substantial evidence that Mondragon attempted to apply the brakes to avoid the collision. Mondragon on direct examination testified, "I believe I stepped on the brakes." On cross-examination his testimony is:

"On direct examination in response to a question by Mr. Lorentzen, I stated that after going into that first curve that I could not remember anything, except, I believe, I said, I think, I believe I stepped on the brake. I am not really sure one way or the other. I am not sure."

Mondragon was unconscious for two days after the accident. It appears that he suffered from traumatic amnesia. Mondragon's testimony, supported by his attending physician, is that he had no recollection of anything that happened from the time he made a turn 1100 feet north of the accident corner to the time that he regained consciousness in the hospital. Disclaimer of any recollection of any occurrence immediately prior to the accident appears frequently in his testimony and also in pre-trial statements he made which were read into evidence.

We do not consider the fact that Mondragon's left leg and hip were severely injured is any evidence that the brakes were applied. The severe collision impact on Mondragon's car was from the front and left, near the driver's seat, and the leg injuries sustained would in all probability have resulted whether or not his foot was on the brake.

■ The Iowa "no eye witness rule" which, under appropriate circumstances, aids a plaintiff in establishing freedom from contributory negligence will not serve as a substitute for the burden imposed upon him to prove defendant's negligence and proximate cause. DeBuhr v. Taylor, 232 Iowa 792, 5 N.W.2d 597; Young v. Chicago, M., St. Paul & P. Ry. Co., 223 Iowa 773, 273 N.W. 885; Snell, "Eyeing the Iowa No Eyewitness Rule", 43 Iowa Law Review 57, 59.

The trial court in its ruling on the motions for directed verdict properly recognized that under Iowa law the "no eye witness rule" would not supply the need for proof of negligence and proximate cause.

The accident occurred on the sharp right angle curve west of Jefferson, Iowa. Some 500 feet from this curve is an official curve sign with a posted speed limit thereon of 15 miles per hour. Mondragon was approaching this curve from the north, the Wiggins car was approaching from the west. Due to amnesia neither Mondragon nor the operator of the Wiggins car was able to testify as to the facts surrounding the collision. A passenger in the Wiggins car, who subsequently died as a result of injuries sustained, in a res gestae statement, admitted without objection, stated:

"* * * she saw a car coming from the north at a very high rate of speed and she told her brother-in-law to drive right straight on off, not to turn; that he was going to hit them; and she said they did even get out of the way until he had crashed into them. She said she thought he was driving 80 miles an

hour. * * * She said it continued in a straight line. She said it just came right at them. She told me she saw the car that hit them up until the time of the impact."

There is other evidence that Mondragon approached the sharp curve at a speed of 55 to 60 miles per hour. The position of the cars after the accident shows that Mondragon did not make the turn, but continued south, and that the collision occurred to the south of the pavement at the curve.

Precedents are of little value as an aid in determining cases of this type. Each case must turn on its own facts, and facts differ. In a number of cases based on manufacturers' liability, recovery has been denied upon the basis of insufficiency of the evidence to support the verdict. See and compare: Smith v. General Motors Corp., 5 Cir., 227 F.2d 210; Lovas v. General Motors Corp., 6 Cir., 212 F.2d 805; Landon v. Lee Motors, Inc., 161 Ohio St. 82, 118 N.E.2d 147; Harward v. General Motors Corp., 235 N.C. 88, 68 S.E.2d 855.

In the Landon case, supra, the alleged defective part was discovered three months after the accident. In affirming a directed verdict for the defendant, the court placed some significance on the fact that the defective part could have changed in appearance during the three-month interval.

In Smith v. General Motors Corp., supra, a case in some respects similar to the present case, the court, in affirming the direction of the verdict in favor of the defendant, states (at page 216 of 227 F.2d):

"Clearly, here, no one could say that the likelihood that Smith met his death as a result of a mechanical defect is any greater than that the collision with the bridge abutment resulted from human failure which, as reasonable men, we all know greatly preponderates as the cause of automobile accidents."

In our present case we do not believe that plaintiffs have produced substantial evidence to establish that their theory that the accident was caused by defective brakes is reasonably probable, and that such hypothesis is more probable than any other hypothesis based upon the evidence. The trial judge, who heard and observed the witnesses, in connection with his ruling on the motions for directed verdict, stated to defendant's counsel:

"I would grant an addition to that off the record; that probably your theory of the case is a little stronger than plaintiffs' theory but that is for the jury to determine, of course."

It seems clear to us that it is more probable that the accident was caused by Mondragon's failure to observe and heed the warning of the sharp curve and the 15 mile per hour speed limitation, or his failure to timely observe the car with which he collided. This we believe is especially true because plaintiffs have failed to establish that Mondragon applied the brakes. They have also failed to prove that the defect, if any, in the brake line impaired the operation of the brakes at the time of the collision. At most, the record here would afford a basis for finding that the plaintiffs' theory was a possibility. The further required finding that plaintiffs' hypothesis was reasonably probable, and more probable than any other hypothesis based on the evidence, could only be the result of guess work or speculation.

We conclude that Mondragon and Farmers Insurance Exchange have failed to prove by substantial evidence that the negligence charged was the proximate cause of the collision and resulting injuries, and that the defendant's motions for directed verdict in its favor on the claims of both plaintiffs should have been sustained.

The judgments appealed from are reversed and the causes are remanded with direction to dismiss both complaints.